UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
Annang Ninortey,                        :
                                        :
                                        : 05 Civ. 542 (SHS)(THK)
                            Plaintiff,  :
                                        :         **Pro Se**
                -against-               :
                                        :      **ORDER AND**
                                        :      **REPORT AND**
                                        :      **RECOMMENDATION**
                                        :
C.O. S. Shova; C.O. J. Beers;           :
C.O. J. Booth; C.O. K. Truesdell;       :
C.O. S. Sarles; Capt. W. Keyser;        :
Dr. H. Mamis; R.N. S. Harlyn;           :
R.N. S. Mrzyglod; Sgt. R. Marinaccio;   :
C.O. M. Rhynders; C.O. H. Rosario;      :
C.O. G. Rayburn; D.S.A. G. Haponik,     :
                                        :
                            Defendants. :
                                        :
----------------------------------------X
**TO: Hon. Sidney H. Stein, United States District Judge.**
**FROM: Theodore H. Katz, United States Magistrate Judge.**

Annang Ninortey ("Ninortey" or "Plaintiff"), a former prisoner
who had been in the custody of the New York State Department of
Correctional Services, brings this prisoner's civil rights action
pro se, pursuant to 42 U.S.C. § 1983.[1]  It was referred to this
Court for general pretrial supervision and Reports and
Recommendations on dispositive motions, in accordance with 28
U.S.C. § 636(b)(1)(B) and (C) and Rule 72.1(a) of the Local Civil
Rules of the Southern District of New York.  Presently before the

_____

[1] At the time of the events complained of, from March 2004
until August 2004, Plaintiff was incarcerated at Green Haven
Correctional Facility.

Court is Defendants' Motion for Judgment on the Pleadings, pursuant to Federal Rule of Civil Procedure 12(c), brought with respect to certain claims in the Second Amended Complaint. For the reasons set forth below, the Court recommends that Claims 1-6 be dismissed with prejudice.

## BACKGROUND

Plaintiff's narrative Complaint, read liberally according to the standards for unrepresented litigants,[2] reveals the following claims:

1. Plaintiff was wrongfully transferred from Fishkill Correctional Facility ("Fishkill"), a medium security facility, to Green Haven Correctional Facility ("Green Haven"), a maximum security facility (see Second Amended Complaint ("Compl."), at 7);[3]

2. Upon arrival at Green Haven, Plaintiff was verbally abused when the staff laughed at him (see id.);

---

[2] See Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 595-96 (1972) (per curiam); Peay v. Ajello, 470 F.3d 65, 67 (2d Cir. 2006) (citing Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir. 1997)); see also Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (noting that the submissions of a pro se litigant must be construed liberally and interpreted "to raise the strongest arguments that they suggest." (quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006)).

[3] The 23-page handwritten Second Amended Complaint (not including attachments) does not contain page or paragraph numbers. For the purposes of this Report and Recommendation, the first page of the Complaint, containing the caption, is considered to be page 1. Page 7 is the first page of the narrative part of the Complaint and begins with "Facts:".

3. Plaintiff was wrongfully denied scheduled showers for two weeks as part of a period of constant harassment by corrections officers (see id.);

4. Plaintiff was wrongfully denied commissary purchases from March 11 to May 25, 2004 (see id. at 7-8);

5. Plaintiff was wrongfully denied conditional release because the staff at Green Haven denied him an initial counselor visit, or any counselor visit, to assist him in signing up for the mandatory programs required before an inmate can be eligible for conditional release (see id. at 8-9);

6. Plaintiff was wrongfully refused a meal by Corrections Officer ("CO") Shova in retaliation for filing grievances (see id. at 9);

7. Plaintiff was brutally assaulted by CO Beers, CO Shova, CO Truesdell, and CO Booth for filing complaints against CO Shova (see id. at 9-10);[4]

8. Captain Keyser, Sargent Marinaccio, CO Rosario, CO Rhynders, CO Rayburn, and CO Sarles participated in, or failed to prevent: (a) an ongoing assault, (b) putting a plastic hand restraint on Plaintiff's neck, causing him to choke, and (c)

---

[4] Because different Defendants were involved in different aspects of the alleged assaults, the Court reads Plaintiff's Complaint as asserting three claims related to the incident in which he was allegedly assaulted, Claims 7-9. Defendants label all of Plaintiff's assault claims as one claim, Claim 7. Therefore, the Court's numbering of the claims asserted by Plaintiff, differs from Defendants' numbering after Claim 7.

beating him, dragging him through the hall, lifting him up by his handcuffed arms causing great pain, and causing him to lose consciousness (see id. at 10-11);

9. CO Sarles, CO Rayburn, and CO Rosario held him while CO Rhynders choked him until he lost consciousness (see id. at 11-12);

10. Plaintiff was then stripped of his clothes and forced, under threat of further beating, to sign a document produced by Nurse Schott (identified as Mrzyglod in the caption), stating he had no injuries (see id. 12-13);[5]

11. Plaintiff was denied medical care by Dr. Mamis and Nurse Harlyn[6] for the injuries he sustained from the assault, and he was verbally abused by Nurse Harlyn (see id. at 13-14);

12. When Plaintiff returned from an outside hospital after a suicide attempt, he was put on suicide watch but still denied medical care (see id. at 14-15);[7]

_____

[5] Defendants' counsel notes that R.N. S. Mrzyglod is actually R.N. S. Schott. Plaintiff agrees that R.N. S. Schott is the proper party.

[6] Counsel for Defendants asserts that the proper spelling is "Harlan". For purposes of consistency, the Court will use the same spelling as is used in the caption, "Harlyn."

[7] Plaintiff also claims that as a result of the abuse and lack of medical care, he was traumatized and attempted suicide (see id. at 14). Defendants' label Plaintiff's attempted suicide as Claim 10. However, this claim does not state a cause of action, but rather identifies the damages Plaintiff suffered as a result of the claims set forth in his Complaint. Thus, the Court does not treat Plaintiff's suicide attempt as a cause of action

13. The reason Defendants assaulted Plaintiff and denied him medical care, was retaliation for filing grievances (see id. at 8, 10, 11).[8]

Defendants argue that several claims must be dismissed because: (1) Plaintiff failed to exhaust administrative remedies, as required by the Prison Litigation Reform Act, with respect to Claims 2, 3, 5, and Defendants' Claim 10; (2) Defendants had no personal involvement in the conduct challenged in Claims 1-5; (3) Plaintiff fails to state a claim for which relief can be granted with respect to Claims 1-6; and (4) the Eleventh Amendment prevents the Court from exercising jurisdiction over officials sued in their official capacity.

For the reasons set forth below, the Court respectfully recommends that Claims 1-6 be dismissed with prejudice. The Court also deems the Complaint to be amended to substitute "R.N. S. Schott" for "R.N. S. Mrzyglod" as the correct party/Defendant.

## DISCUSSION

### I. Motion to Dismiss Standards

Defendants move this Court for a Judgment on the Pleadings,

---

subject to dismissal. Because the Court does not consider Defendants' Claim 10, Plaintiff's attempted suicide, to be a claim for relief, but rather to be a claim of Plaintiff's injuries, the Court will not consider Defendants' arguments as they apply to Claim 10.

[8] Defendants did not identify a retaliation claim in their construction of the Complaint. However, Plaintiff has clearly asserted that he was retaliated against for filing grievances.

dismissing, in part, Plaintiff's Second Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(c). The standards for dismissal under Rule 12(c) are the same as those for dismissal under Rule 12(b)(6), for failure to state a claim for relief. See Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001).

In deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, this Court must construe the allegations of the Complaint in Plaintiff's favor. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974); accord Automated Salvage Transport, Inc. v. Wheelabrator Envtl. Sys., Inc., 155 F.3d 59, 67 (2d Cir. 1998); Branham v. Meachum, 77 F.3d 626, 628 (2d Cir. 1996). Dismissal is warranted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957); accord Harris v. City of New York, 186 F.3d 243, 250 (2d Cir. 1999); Automated Salvage, 155 F.3d at 67. In actions brought under 42 U.S.C. § 1983, a federal court may not apply a "heightened pleading standard" more stringent than the usual pleading requirements of Federal Rule of Civil Procedure 8(a). See Erickson v. Pardus, __ U.S. __, 127 S. Ct. 2197, 2200 (2007) (rejecting heightened pleading standards in a pro se case); Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168,

113 S. Ct. 1160, 1163 (1993).

Furthermore, "[t]he Supreme Court has long held that courts must construe pro se complaints liberally, applying less stringent standards than when a plaintiff is represented by counsel." Erickson, 127 S. Ct. at 2200; accord Elliott v. Bronson, 872 F.2d 20, 21 (2d Cir. 1989) (per curiam) (citing Hughes v. Rowe, 449 U.S. 5, 9, 101 S. Ct. 173, 175 (1980) and Haines, 404 U.S. at 520, 92 S. Ct. at 595). Accordingly, where a plaintiff is proceeding pro se, the court must "read his supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." Branham, 77 F. 3d at 628-29; see also Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

## II. Failure to Exhaust Administrative Remedies

Defendants assert that certain claims asserted by Plaintiff must be dismissed because the pleadings fail to show that he properly exhausted those claims as required by the Prison Litigation Reform Act of 1995 ("PLRA"). As discussed below, all the claims Defendants argue should be dismissed for failure to exhaust should be dismissed for failure to state a claim for which relief can be granted. However, were the Court to consider the issue, it would find that dismissal for failure to exhaust would not be appropriate at this stage in the litigation.

A recent United States Supreme Court case explicitly held that

"failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, Nos. 05-7058, 05-7142, __ U.S. __, 127 S. Ct. 910, 921 (Jan. 22, 2007). Thus, prisoner plaintiffs are not required to plead exhaustion, and complaints are not to be dismissed merely for failure to allege exhaustion on the face of the complaint. See Giano v. Goord, 380 F.3d 670, 675 (2d Cir. 2004); see also Perez v. Westchester County Dep't of Corr., No. 05 Civ. 8120(RMB), 2007 WL 1288579, *3 (S.D.N.Y. Apr. 30, 2007) (stating that the plaintiff's statement that he filed grievances was sufficient to survive summary judgment) (citing Jones, 127 S. Ct. at 921)); cf. Varela v. Demmon, 491 F. Supp. 2d 442, 446 (S.D.N.Y. 2007) (noting that a motion to dismiss for failure to exhaust could not be granted without treating the motion as one for summary judgment (citing Jones, 127 S. Ct. at 921 and Giano, 380 F.3d at 675)).

Here, the narrative Complaint asserts that Plaintiff "wrote a numerous amount of grievances on [his] issues. . . ," and Plaintiff attached one grievance in support of this statement. (Compl. at 8.) Defendants assert that because Plaintiff attached only one grievance to the Complaint, this Court should address exhaustion by ruling on the pleadings, pursuant to Rule 12(c), and conclude that for the claims for which grievances were not attached to the Complaint, or not submitted with Defendants' Motion to Dismiss,

there was a failure to exhaust.

Under Rule 12(c), the court may "consider any documents incorporated into a complaint by reference or upon which the plaintiff relied in drafting his pleadings." <u>Indelicato v. Suarez</u>, 207 F. Supp. 2d 216, 218 (S.D.N.Y. 2002) (citing <u>Cortec Indus., Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 47 (2d Cir. 1991)); <u>see also Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 152-53 (2d Cir. 2002). However, Rule 12(c) requires that a plaintiff be given the opportunity to present "all material made pertinent to such a motion." Fed. R. Civ. P. 12(c). The Southern District of New York, in furtherance of the requirements of Rule 12(c), has promulgated Local Civil Rule 12.1, requiring special notice to <u>pro se</u> litigants that, in respect to a Rule 12(c) motion, controverting evidence must be submitted or their claims may be dismissed. <u>See</u> Local R. Civ. P. 12.1. No such notice appears to have been given to Plaintiff; nor does it appear that Plaintiff had a sufficient opportunity to discover and provide all materials pertinent to the other grievances he purportedly filed. Thus, the Court cannot conclude that the requirements of Rule 12(c) have been met.

Additionally, there is a fact question as to what grievances Plaintiff filed, and whether the claims in the Complaint were properly exhausted. First, although Defendants assert that Plaintiff did not exhaust all of his claims, and they have attached to their motion in support of that assertion some of the grievances

Plaintiff did file, the Court may not presume that Defendants' statements are true; rather, for purposes of a Rule 12 motion, Plaintiff's contention that he exhausted his claims is presumed true. See Section I., Motion to Dismiss Standards, supra. Second, Defendants have not attached a signed and sworn affidavit by someone with knowledge, indicating that the grievances attached to their Motion to Dismiss constitute all the grievances filed by Plaintiff while he was incarcerated at Green Haven, or that further discovery will not result in additional grievances being produced. Third, Plaintiff has been released from prison; thus, it is questionable whether, absent further discovery, he could have obtained copies of all the grievances and letters that he claims to have filed with the Department of Corrections. The issue of exhaustion of administrative remedies is therefore inappropriate to resolve at this stage of the proceedings. See Varela, 491 F. Supp. 2d at 446; see also Randolph v. City of New York Dep't of Correction, No. 05 Civ. 8820(GEL)(MHD), 2007 WL 2660282, *5 (S.D.N.Y. Sept. 7, 2007) (holding that "insofar as the dismissal of [plaintiff's] complaint was based on his failure to allege such exhaustion in his complaint, the dismissal was unjustified."); cf. Abbas v. Dixon, 480 F.3d 636, 640 (2d Cir. 2007) (concluding that, because the face of the complaint did not indicate the existence of a meritorious defense (statute of limitations), the District Court should not have dismissed the complaint on the basis of an

anticipated defense without granting the plaintiff notice and an opportunity to be heard).

III. <u>The Substantive Deficiencies of Claims 1 through 6</u>

A. <u>Claim 1 - Wrongful Transfer</u>

In his Complaint, Plaintiff explains that he was originally incarcerated at the Fishkill Correctional Facility, a medium security facility. (<u>See</u> Compl. at 7.) After a hearing held in Manhattan, instead of returning to Fishkill, he was transferred to Green Haven, which is a maximum security facility. (<u>See</u> <u>id.</u>) Plaintiff complains that he was wrongfully transferred from Fishkill to Green Haven. (<u>See</u> <u>id.</u>)

Defendants move to dismiss this claim because Plaintiff has failed to plead any general or specific facts connecting any of the named Defendants to the alleged unconstitutional conduct, and because he has failed to state a claim for which relief may be granted.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." <u>Farrell v. Burke</u>, 449 F.3d 470, 484 (2d Cir. 2006) (quoting <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994)); <u>see also</u> <u>Blyden v. Big Black</u>, 186 F.3d 252, 264 (2d Cir. 1999); <u>Colon v. Coughlin</u>, 58 F.3d 865, 873

(2d Cir. 1995).[9]

Plaintiff has not identified the individuals involved in the decision to transfer him to Green Haven, and has not alleged that any of the named Defendants (all of whom were employed at Green Haven) were among those who made the decision to transfer him. Therefore, Plaintiff fails to state a claim for relief against any of the Defendants.

Furthermore, Plaintiff did not have a constitutional right to be housed in a particular prison. See McKune v. Lile, 536 U.S. 24, 39, 122 S. Ct. 2017, 2027 (2002) (noting that an inmate's transfer to another facility does not implicate a liberty interest, even if the transfer results in the loss of programs) (citing Hewitt v. Helms, 459 U.S. 460, 467, n. 4, 103 S. Ct. 864, (1983)); see also Wilkinson v. Austin, 545 U.S. 209, 220, 125 S. Ct. 2384 2393 (2005) (noting that there is no liberty interest in avoiding transfer to a more adverse condition of confinement) (citing Meachum v. Fano, 427 U.S. 215, 225, 96 S. Ct. 2532, 2538 (1976)). Thus, Plaintiff has not stated a claim for which relief can be granted.

---

[9] "'[P]ersonal involvement' of supervisory officials is established upon demonstration of one of the following: (1) the supervisory official, after learning of the violation, failed to remedy the wrong; (2) the supervisory official created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; or (3) the supervisory official was grossly negligent in managing subordinates who caused the unlawful condition or event." Gutierrez v. Joy, 502 F. Supp. 2d 352, 362 (S.D.N.Y. 2007) (citing Spencer v. Doe, 139 F.3d 107, 112 (2d Cir. 1998)).

Because there is no allegation that the named Defendants participated in the decision to transfer Plaintiff, and Plaintiff had no right to remain in a particular prison, Plaintiff has failed to state a claim for which relief can be granted under Section 1983. The Court therefore recommends that Plaintiff's wrongful transfer claim be dismissed with prejudice.

B. Claim 2 – Being Laughed At

Plaintiff claims that "upon [his] arrival at Green Haven, the escorting officer as well as the nurses in the clinic all began to laugh at [him] when [he] entered the clinic. This continued for sometime." (Compl. at 7.) Defendants assert that this claim should be dismissed for failure to identify a Defendant who personally participated in the challenged conduct, and for failure to state a claim for which relief may be granted.

Again, the Complaint fails to allege that any of the named Defendants were the officers or nurses involved in this incident. Because there is no allegation of Defendants' personal involvement, Defendants are entitled to have this claim dismissed.

Additionally, merely laughing at a prisoner is not a violation of a constitutional or other federally protected right. Cf. Aziz Zarif Shabazz v. Pico, 994 F. Supp. 2d 460, 474 (S.D.N.Y. 1998) (noting that a claim of verbal abuse, verbal harassment, or profanity alone, "unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem,"

13

does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983) (quoting Del Carpio v. Walker, No. Civ. A. 95 Civ. 1502(RSP)(GJD), 1997 WL 642543, at *6 (N.D.N.Y. Oct. 15, 1997) (citing Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam)). Accordingly, the allegation in Claim 2 fails to state a claim for which relief can be granted. Therefore, the Court recommends that Claim 2 be dismissed with prejudice.

C. Claims 3, 4 & 6 - Wrongful Denial of Scheduled Showers, Wrongful Denial of Commissary Purchases, and Wrongful Denial of Breakfast

Plaintiff claims that he was denied showers for two weeks "by the study officers working on the 7-3 shift. . . ." (Compl. at 7.) He further claims that he was "refused a commissary buy from March 11, 2004 thru May 25, 2004." (Id.) Finally, Plaintiff asserts that he was once denied breakfast by Defendant CO Shova. (See id. at 9.) Defendants assert that Plaintiff has failed to state claims for which relief may be granted.

In order for a prisoner to assert a viable conditions of confinement claim under the Eighth Amendment, it must be shown that the conditions, when viewed objectively, were sufficiently serious so as to "deprive [him] of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399 (1981); see also Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006) (citing Wilson v. Seiter, 501 U.S. 294, 298, 111 S.

Ct. 2321 (1991)); McCoy v. Goord, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003). Furthermore, "the charged official must act with a sufficiently culpable state of mind." Salahuddin, 467 F.3d at 280. If the officials involved acted with "'deliberate indifference' to the inmates' health or safety," they may be culpable. Hope v. Pelzer, 536 U.S. 730, 738, 122 S. Ct. 2508, 2514 (2002) (citing Hudson v. McMillian, 503 U.S. 1, 8, 112 S. Ct. 995 (1992)); see also Wilson, 501 U.S. at 298.

    . Here, the conditions to which Plaintiff claims he was subjected were not objectively serious enough to give rise to an Eighth Amendment violation. There is no basis to conclude that denial of commissary purchases for two months resulted in Plaintiff being deprived of the minimal civilized measure of life's necessities. See McCoy, 255 F. Supp. 2d at 260. Similarly, while a two-week suspension of shower privileges would be unpleasant, Plaintiff has not alleged that his condition was so unsanitary so as to pose a threat to his health or safety. Absent any risk to health or safety, a two-week deprivation of showers does not satisfy the objective standard for an Eighth Amendment violation. See id.; Cruz v. Jackson No. 94 Civ. 2600 (RWS), 1997 WL 45348, *6 (S.D.N.Y. Feb. 5, 1997). Therefore, even if Plaintiff were able to properly identify the officers responsible for depriving him of showers or commissary purchases, he would fail to state a claim for which relief could be granted.

Finally, Plaintiff's claim that he was denied breakfast on one occasion also does not give rise to an Eighth Amendment violation. Denial of food, under certain circumstances, can amount to an Eighth Amendment violation. See Phelps v. Kapnolas, 308 F.3d 180, 186 (2d Cir. 2002) (deprivation of a nutritionally adequate diet for fourteen straight days is sufficiently serious to meet the objective requirement); see also Brooks v. Chappius, 450 F. Supp. 2d 220, 225 n.1 (W.D.N.Y. 2006) (noting that, "depending on the amount and duration of the deprivation, deprivation of food can give rise to a claim under the Eighth Amendment") (citing Reed v. McBride, 178 F.3d 849, 853 (7th Cir. 1999)). However, denial of a single meal, to an otherwise healthy inmate, does not give rise to an Eighth Amendment claim. See Gill v. Hoadley, 261 F. Supp. 2d 113, 129 (S.D.N.Y. 2001). Therefore, the Court respectfully recommends that Claims Three, Four, and Six be dismissed with prejudice.

D. Claim 5 - Wrongful Denial of Conditional Release

Plaintiff claims that during his time at Green Haven, he was refused an initial, or any, visit with a counselor. (See Compl. at 8.) Such a visit was apparently necessary in order for Plaintiff to sign up for "mandatory programming . . . in order to be released on [his conditional release] date which was October 12, 2004." (Id. at 8.) Plaintiff filed a grievance "on the issue," and also wrote to Senior Counselor Marmame ("Marmame") and Deputy

Superintendent W. Haggett ("Haggett") to explain his situation.[10]
(See id.)

Eventually, Plaintiff received a letter from Haggett stating
that Plaintiff's original counselor had been sick and that a Mr.
Read would be sending a "call-out" to see him in the near future.
(See id.)   He never received the "call-out."   (See id.)   As a
result of not being seen by a counselor, Plaintiff never signed up
for programs necessary to qualify him for conditional release.
Thus, at Plaintiff's time allowance review, in August of 2004, his
conditional release date was adjourned at a hearing presided over
by Deputy Superintendent Haponik ("Haponik").   (See id. at 8-9.)

At that hearing, Plaintiff explained why he did not complete
the mandatory programming.   (See id.)   Nonetheless, Haponik
adjourned Plaintiff's conditional release date because he had not
participated in the mandatory programming, and ordered a
reconsideration of conditional release in July of 2005 – nearly one
year later.   (See id. at 9.)   Thus, according to Plaintiff, the
effect of denying him the opportunity to meet with a counselor, and
thereafter sign up for programs, was to extend the amount of time
Plaintiff was incarcerated.

Defendants argue that Plaintiff fails to state a claim for
which relief can be granted because the persons responsible for
Plaintiff's inability to enroll in the required programs are not

---

[10] Neither Marmame nor Haggett are named defendants.

named defendants.  Additionally, Defendants argue that Plaintiff has failed to allege how Deputy Superintendent Haponik, who is a named Defendant, violated his constitutional rights.  The Court agrees.

Read liberally, Plaintiff's Complaint appears to assert two possible claims.  First, his Complaint could be read to assert a violation of due process rights because he was wrongfully denied his liberty interest in conditional release.  Second, his Complaint could be read to assert a substantive due process claim that he was wrongfully confined because he was not released on his original conditional release date.  Neither is a claim, under the circumstances of this case, for which relief can be granted.

### 1.  Procedural Due Process Claim

Liberty interests may arise directly from the Due Process Clause of the Fourteenth Amendment itself or from the laws of the states.  Klos v. Haskell 48 F.3d 81, 86 (2d Cir. 1995) (citing Hewitt v. Helms, 459 U.S. 460, 466, 103 S. Ct. 864, 868 (1983)).  However, prisoners retain "only a narrow range of protected liberty interests."  Helms, 459 U.S. at 467, 103 S. Ct. at 869.  Thus, the Supreme Court has held that an inmate has no inherent liberty interest in being conditionally released on parole.  See Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7, 99 S. Ct. 2100, 2103-04 (1979).

However, states may, under certain circumstances, create

liberty interests which are protected by the Due Process Clause. See Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300 (1995). The Second Circuit has not directly held that New York has created an enforceable liberty interest in conditional release. See Doe v. Simon, 221 F.3d 137, 139 (2d Cir. 2000). Nonetheless, some district courts in the Second Circuit have found that New York Penal Law § 70.40(b)(1), providing for conditional release, creates a liberty interest when a defendant is sentenced to an indeterminate sentence.[11] See, e.g., Peterson v. Tomaselli, 469 F. Supp. 2d 146, 163, 165 (S.D.N.Y. 2007) ("New York's conditional release statute creates a liberty interest subject to due process protections. . . ."); Schwartz v. Dennison, No. 06 Civ 9390 (RJH), 2007 WL 2812690 at *12 (S.D.N.Y. Sept. 28, 2007) (noting that

---

[11] New York Penal Law § 70.40(1)(b) reads: "[Eff. until Sept. 1, 2009. See, also, par. (b) below.] A person who is serving one or more than one indeterminate or determinate sentence of imprisonment shall, if he so requests, be conditionally released from the institution in which he is confined when the total good behavior time allowed to him, pursuant to the provisions of the correction law, is equal to the unserved portion of his term, maximum term or aggregate maximum term; provided, however, that (i) in no event shall a person serving one or more indeterminate sentence of imprisonment and one or more determinate sentence of imprisonment which run concurrently be conditionally released until serving at least six-sevenths of the determinate term of imprisonment which has the longest unexpired time to run and (ii) in no event shall a person be conditionally released prior to the date on which such person is first eligible for discretionary parole release. The conditions of release, including those governing post-release supervision, shall be such as may be imposed by the state board of parole in accordance with the provisions of the executive law."

timely placement in a treatment program directly affects release on parole, and thus, when the institution does not timely place an inmate in a treatment program, a liberty interest is implicated because a prisoner has gone from being eligible for parole to ineligible for parole).

The gravamen of a procedural due process claim is ultimately whether the process was proper through which a person was denied a liberty or property interest. If a prisoner received sufficient process to satisfy constitutional standards, it is not necessary to determine whether a liberty interest exists because, even if there were such an interest, no due process violation would have occurred. See Simon, 221 F.3d at 139-40. Thus, this Court need not determine whether Plaintiff had a liberty interest in his conditional release if, when his condition release date was adjourned, he was given all the process he was due. See id.

In Simon, the Second Circuit held that in the conditional release "arena," due process requires only notice of the conditions placed on the prisoner's release, an explanation of the reason for the condition, and an opportunity to dispute the grounds for the condition. See id. at 139-140. Here, Plaintiff appears to concede that he knew he was required to participate in certain programs in order to receive good time credit and secure conditional release. Plaintiff received a hearing during which he was afforded the opportunity to explain why he did not participate in the required

programs.  At the hearing, Haponik heard Plaintiff's complaint about not being able to sign up for programs and explained to Plaintiff why his conditional release date was being taken away – failure to participate in programs.  Thus, Plaintiff received all of the process he was due.[12]  There is no basis to conclude that Haponik improperly deprived Plaintiff of his right to due process, and the Complaint does not plead otherwise.

### 2.  Wrongful Confinement Claim

An alternative reading of Plaintiff's Complaint is that he was denied his substantive right to liberty – that is, that he was wrongfully confined beyond the date by which he was entitled to be released.  A prisoner does have a right to be set free at the end of his sentence term.  See Calhoun v. New York State Division of Parole Officers, 999 F.2d 647, 653 (2d Cir. 1993).  However, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."  Greenholtz, 442 U.S. at 7, 99 S. Ct. at 2104 (emphasis added).  Because conditional release is just that – conditional – a conditional release date is not the "expiration" of a prisoner's valid sentence.  Rather, a conditional release date represents a mere possibility that a prisoner may be released

---

[12] If due process required a finding supported by some evidence, see Schwartz, 2007 WL 2812690 at *8, because Plaintiff did not participate in programs that were required to secure good time credit, then there was some evidence supporting, or a rational basis for, Haponik's decision.

early, provided that certain conditions are met.  The language of the New York law at issue supports this conclusion.

New York Penal Law § 70.40(1)(b) states: "A person who is serving . . . [an] indeterminate . . . sentence of imprisonment shall, _if_ he so requests, be conditionally released from the institution _when_ the total good behavior time allowed to him, pursuant to the provisions of the correction law . . . is equal to the unserved portion of his term. . . ."  N.Y. Penal L. § 70.40 (2007).  Thus, notwithstanding the "shall" language, certain preconditions must still be met before an inmate is entitled to conditional release.  In this case, the most important precondition is that "good behavior time allowed" has been earned and granted.[13]  Plaintiff has not alleged that he earned, or was granted, good time such that he was entitled to be released on his original conditional release date.

Construing the Complaint liberally, Plaintiff could be asserting that, had he been allowed to sign up for programs, he would have successfully completed those programs and earned good time credits.  Thus, had he been placed in programs, he would have been entitled to his original conditional release date.  This conclusion is premised on several assumptions: (1) that Plaintiff

---

[13] For the laws applicable to good behavior allowances and the regulation of the Time Allowance Committees, _see_ N.Y. Corr. Law § 803 (2007) ("Good behavior allowances against indeterminate and determinate sentences") and  N.Y. Comp. Codes R. & Regs tit. 7, § 261 et. seq. (2007) ("Time Allowance Committees").

had a right to be placed in programs, (2) that had he been placed
in programs he would have successfully completed them, and (3) that
his institutional record was such that he would not have been
denied conditional release. However, the mere speculative
possibility of conditional release does not create an entitlement
to be free on a particular date prior the expiration of a valid
sentence. See id.; see also Barna v. Travis, 239 F.3d 169, 171 (2d
Cir. 2001) (holding, in the context of parole, that: "Neither the
mere possibility of release, nor a statistical probability of
release, gives rise to a legitimate expectancy of release. . . ."
(internal citations omitted)).

Hypothetically, if Plaintiff had participated in programs,
earned the good time, and not had any bad behavior deductions, and
Haponik then had arbitrarily denied[14] Plaintiff his conditional
release date, Plaintiff might have grounds to assert a
constitutional claim. However, that is not the case here;
Plaintiff never participated in, let alone completed, the programs.
Thus, he does not have a general claim for damages for denial of
conditional release, and he certainly does not have a claim against
Haponik, in particular.

Haponik, as the only Defendant against whom this claim is
asserted, is not alleged to have been responsible for depriving

---

[14] Cf. Schwartz, 2007 WL 2812690, at *8 (finding that denial
of parole must be supported by "some evidence").

Plaintiff of the programs that might have entitled him to his early release date. It follows that, even if a claim of wrongful confinement could be properly asserted in the Complaint, it could not be asserted against Haponik.[15] Therefore, the Court respectfully recommends that Claim 5 be dismissed with prejudice.

IV. Eleventh Amendment Immunity

Defendants argue that insofar as Plaintiff is suing them for acts taken in their official capacities as employees of DOCS, the claims against them should be dismissed on the basis of Eleventh Amendment immunity.

It is well-settled that the Eleventh Amendment bars suit in federal court "by private parties seeking to impose a liability which must be paid from public funds in the state treasury." Edelman v. Jordan, 415 U.S. 651, 663, 94 S. Ct. 1347, 1355 (1974); see also Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-99, 104 S. Ct. 900, 906-07 (1984); Smith v. Schwartz, No. 98-CV-2838, 1999 WL 294733, at *2 (E.D.N.Y. Mar. 22, 1999); Ettinger v. State Univ. of New York State College of Optometry, No. 95 Civ. 9893 (RWS), 1998 WL 91089, at *8 (S.D.N.Y. Mar. 2, 1998). Eleventh Amendment immunity extends to damage actions against state

---

[15] Even if Plaintiff could assert a proper claim against parties not named in his Complaint, those claims would be time-barred because the events complained of occurred more than three years ago. See Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004) ("The statute of limitations applicable to claims brought under §§ 1981 and 1983 in New York is three years.").

officials who are sued in their official capacities because the
state is the real party in interest. See Posr v. Court Officer
Shield # 207, 180 F.3d 409, 414 (2d Cir. 1999); Spencer v. Doe, 139
F.3d 107, 111 (2d Cir. 1998); Rodriguez v. Weprin, 116 F.3d 62, 65
(2d Cir. 1997).

Section 1983 does not override a state's Eleventh Amendment
immunity, unless the state has waived its immunity or Congress has
passed specific legislation legitimately overriding that immunity.
See Will v. Michigan Dep't of State Police, 491 U.S. 58, 66, 109 S.
Ct. 2304, 2309-10 (1989); see also Kentucky v. Graham, 473 U.S.
159, 169, 105 S. Ct. 3099, 3107 (1985); Quern v. Jordan, 440 U.S.
332, 341-42, 99 S. Ct. 1139, 1145-46 (1979); Muller v. Costello,
187 F.3d 298, 307 (2d Cir. 1999); Richardson v. New York State
Dep't of Correctional Servs., 180 F.3d 426, 448 (2d Cir. 1999).
New York has not waived its immunity. See Komlosi v. New York State
Office of Mental Retardation and Developmental Disabilities, 64
F.3d 810, 815 (2d Cir. 1995) (finding New York state immune to suit
brought under § 1983); see also Trotman v. Palisades Interstate
Park Comm'n, 557 F.2d 35, 40 (2d Cir. 1977) (finding that New York
State has not waived its Eleventh Amendment immunity).

However, the Eleventh Amendment does not bar private parties
from suing state officials in their individual capacities, under §
1983. See Hafer v. Melo, 502 U.S. 21, 27, 112 S. Ct. 358, 362-63
(1991) (stating that state officials, sued in their individual

capacities, are "persons" within the meaning of § 1983 and that the Eleventh Amendment does not bar such suits). State employees may be liable under § 1983 for damages in their individual capacities, even when the conduct in question is related to their official duties. See Ying Jing Gan v. City of New York 996 F.2d 522, 529 (2d Cir. 1993); see also Morris v. Eversley, 282 F. Supp. 2d 196, 202 (S.D.N.Y. 2003). Thus, so long as a state employee is personally involved in a violation of a prisoner's rights and is sued in his individual capacity, suit may be brought under § 1983. See Ford v. Reynolds 316 F.3d 351, 356 (2d Cir. 2003) (citing Berman Enters. v. Jorling, 3 F.3d 602, 606 (2d Cir. 1993)).

In the instant case, it is not clear from the Complaint if Defendants are being sued in their individual or official capacities. The Court will therefore construe the allegations of the Complaint to be against Defendants in their individual capacities, because they could not otherwise be liable for monetary damages, which is the only relief Plaintiff seeks.

V. Unopposed Motion to Amend Complaint

Defendants' counsel notes that R.N. S. Mrzyglod is actually R.N. S. Schott. Plaintiff agrees that R.N. S. Schott is the proper party. Thus, both Plaintiff and Defendants agree that the caption mis-identifies Nurse Schott as "Mrzyglod." The Court will treat Plaintiff's concession that Mrzyglod is in fact Schott, as a Motion to Amend the Second Amended Complaint, and Defendants recognition

of the error as an indication that they do not oppose the motion. Therefore, the Court will deem the Complaint to be amended to substitute "R.N. S. Schott" for "R.N. S. Mrzyglod" as the correct party/Defendant.

## CONCLUSION

For the reasons set forth above, the Court respectfully recommends that Claims 1-6, in the Second Amended Complaint, be dismissed with prejudice. In addition, the Court, under the authority of 28 U.S.C. § 636(b)(1)(A), deems the Complaint to be amended, and substitutes "R.N. S. Schott" for "R.N. S. Mrzyglod."

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this report to file written objections. <u>See also</u> Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Sidney H. Stein, United States District Judge, and to the chambers of the undersigned, Room 1660. Any requests for an extension of time for filing objections must be directed to Judge Stein. Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140, 106 S. Ct. 466 (1985); <u>IUE AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993), <u>cert. denied</u>, 513 U.S. 822, 115 S. Ct. 86 (1994); <u>Frank v. Johnson</u>, 968 F. 2d 298, 300 (2d Cir.), <u>cert. denied</u>, 506 U.S. 1038, 113 S. Ct. 825 (1992);

Small v. Secretary of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

This Report and Recommendation refers to Docket #50.

THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated:     December 7, 2007
           New York, New York

Copies sent to:

Annang Ninortey
New York Presbyterian Hospital
21 Bloomingdale Ave., Unit 6N
White Plains, NY 10605

Neil Shevlin
Assistant Attorney General
120 Broadway, 24th Floor
New York, NY 10271